UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NATALIE RODRIGUES,
                      Plaintiff,

-v-

FAMILY JUSTICE CENTERS
(MANHATTAN AND QUEENS),
                      Defendants.

18-CV-6999 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    Plaintiff Natalie Rodrigues brings this action *pro se* against Defendants the Family Justice Centers of Manhattan and Queens (the "Centers" or "Defendants"). Rodrigues filed this action on February 14, 2018, in the Supreme Court of New York, New York County. (Dkt. No. 1 ¶ 2.) Defendants were served on July 17, 2018 (Dkt. No. 1 ¶ 3), and removed the case to this Court in a timely manner on August 3, 2018 (Dkt. No. 1 ¶ 7).

    Shortly thereafter, Defendants moved to dismiss Rodrigues's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Dkt. No. 9.) For the reasons that follow, Defendants' motion is granted.

**I.    Background**

    Rodrigues's complaint consists of a single page of allegations and two attachments from the internet. (Dkt. No. 1-1 at 4–9.) The gravamen of the complaint is that the Family Justice Centers of Manhattan and Queens failed to provide Rodrigues with services upon request, in violation of her rights.

    New York City's Family Justice Centers, located in Bronx, Brooklyn, Manhattan, and Queens, "are walk-in centers for victims of domestic violence, elder abuse, and sex trafficking." (Dkt. No. 1-1 at 5.) Rodrigues alleges that "on three occasions [she] went to the Family Justice

Center in Queens starting in 2015; and three times in Manhattan starting in July 2017-January 2018." (Dkt. No. 1-1 at 4.)  At the Centers, she requested assistance with "obtaining [a] police report," but staff "said they were unable to assist with that" despite "assisting other woman instead." (*Id*.)  Rodrigues also alleges that she requested a safe place to stay, but staff "failed to assist with this as well." (*Id*.)

Rodrigues "seek[s] compensation" for the Centers' failure to provide assistance on six enumerated grounds:  (1) as "[d]iscrimination"; (2) for the "[f]ailure to provide housing"; (3) for causing "[e]motional distress"; (4) for contributing to "[e]conomic strains/losses" caused by third-parties as a result of the Centers' inaction; (5) for violating "equal protection" and 18 U.S.C. § 3771; and (6) for violating her "right to free speech." (*Id.*)  Rodrigues's complaint seeks "restitution of [$]1 million in discrimination and [$]100,000 in" the cost of "obtaining a safe place, expenses of not having a safe place[]." (*Id.*)

## II. Legal Standard

In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court must accept as true all well-pleaded factual allegations in the complaint and "draw[] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006) (citation omitted).

Moreover, courts must afford *pro se* plaintiffs "special solicitude" before granting motions to dismiss or motions for summary judgment. *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir.

1994). "A document filed *pro se* is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Therefore, courts interpret a *pro se* plaintiff's pleadings "to raise the strongest arguments they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (citation omitted). "Even in a *pro se* case, however, 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)).

## III. Discussion

The parties' briefing in this case raises three issues: (1) whether to remand the case to state court; (2) whether to grant the motion to dismiss; and (3) whether to grant Rodrigues leave to amend her complaint. The Court addresses each in turn.

### A. Motion to Remand

Before turning to the merits, the Court examines whether this action should be kept in federal court or remanded back to state court. Rodrigues's response brief "requests that the case be settled or tried in the Supreme Court of New York." (Dkt. No. 13 at 1.) The Court construes this as a motion to remand.

The Centers removed the case under 28 U.S.C. § 1441(a) because Rodrigues's complaint alleged claims under federal law. (Dkt. No. 1 ¶¶ 5–6.) Rodrigues agrees that the Court has subject matter jurisdiction over her claims. (Dkt. No. 13 at 3.) Indeed, federal question jurisdiction exists over Rodrigues's constitutional and federal discrimination claims, and the

3

Court may exercise supplemental jurisdiction over any state law claims. 28 U.S.C. §§ 1331, 1367(a). To the extent Rodrigues seeks to remand the case, then, it is not on jurisdictional grounds; rather, it seems to be on the basis of public policy considerations. (Dkt. No. 13 at 3 (describing Defendants as "a NY based origination and not a national organization" and "the subject in question" as thus "only the concern of NY").)

The Court need not resolve the merits of this argument, because any motion to remand on this basis is time-barred. Under 28 U.S.C. § 1447(c), "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." 28 U.S.C. § 1447(c). Rodrigues was thus required to raise her request for remand within thirty days of the Centers' filing of the notice of removal on August 3, 2018. (Dkt. No. 1.) However, she sought remand for the first time in her response brief, which was sworn and filed on September 10, 2018, thirty-eight days after the notice of removal was filed. (Dkt. No. 13 at 4.) Therefore, as the Centers note (Dkt. No. 14 at 2), Rodrigues's motion for remand in this case was untimely.

## B. Motion to Dismiss

Defendants move to dismiss Rodrigues's complaint in its entirety for failure to state a claim under Rule 12(b)(6). (Dkt. No. 9.) The Court reads the complaint as potentially seeking to allege seven discrete claims, challenging: (1) discrimination under Title VI; (2) violation of substantive due process rights; (3) infliction of emotional distress; (4) conspiracy to violate civil rights; (5) violation of equal protection rights; (6) violation of free speech rights; and (7) fraud. Due to the lack of sufficient factual allegations in the complaint, each of these claims is dismissed.

### 1. Discrimination

The first claim in Rodrigues's complaint alleges that she suffered "[d]iscrimination" through the Centers' "failure to provid[e Rodrigues] with advocacy" notwithstanding the assistance provided to "other wom[e]n instead." (Dkt. No. 1-1 at 4.) As Defendants suggest (Dkt. No. 10 at 7), the Court interprets this assertion as an attempt to state a claim under Title VI of the Civil Rights Act of 1964.[1]

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To state a claim for discrimination under Title VI, "a plaintiff must plausibly allege 'that the defendant discriminated against [her] on the basis of race, [color, or national origin,] that discrimination was intentional, and that the discrimination was a "substantial" or "motivating factor" for the defendant's actions.'" *Weiss v. City Univ. of N.Y.*, No. 17 Civ. 3557, 2019 WL 1244508, at *9 (S.D.N.Y. Mar. 18, 2019) (first alteration in original) (quoting *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001)).

Defendants contend that the complaint fails to allege sufficient facts to plausibly establish

---

[1] The Court notes that next to the first numbered item labeled "[d]iscrimination," in handwritten annotation, the complaint reads "public accommodation." (Dkt. No. 1-1 at 4.) This could be interpreted as an indication that Rodrigues attempts to state a claim under Title II of the Civil Rights of Act of 1964, which prohibits "discrimination or segregation on the ground of race, color, religion, or national origin" in the provision of goods and services in "any place of public accommodation." 42 U.S.C. § 2000a(a).

However, individual plaintiffs cannot recover damages for claims brought under Title II; rather, "only injunctive relief [is] available as remedy." *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 86 (2d Cir. 2004) (citing *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968)). And in this case, the only relief Rodrigues seeks is monetary damages. (*See* Dkt. No. 1-1 at 4.) Therefore, to the extent Rodrigues seeks to bring a claim for damages under Title II, the claim is barred as a matter of law.

these elements. (Dkt. No. 10 at 7–8.) They are correct. Rodrigues's complaint contains no factual allegations to suggest that, in denying her requests for services, the Centers were motivated by discrimination against Rodrigues on the basis of her race, color, or national origin. Where, as here, a complaint "consist[s] of nothing more than naked assertions, and set[s] forth no facts upon which a court could find a violation of the Civil Rights Acts," it thus "fails to state a claim under Rule 12(b)(6)." *Weinreb v. Xerox Bus. Servs., LLC Health & Welfare Plan*, 323 F. Supp. 3d 501, 522 (S.D.N.Y. 2018) (quoting *Martin v. N.Y.S. Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978)). For this reason, Rodrigues's discrimination claim is dismissed.

## 2. Substantive Due Process

Rodrigues's second claim seeks compensation for the "[f]ailure to provide housing/a safe location (as per the tax paying dollars funding the organization(s) that [she] ha[d] paid into offer)." (Dkt. No. 1-1 at 4.) The Court construes this assertion as raising a substantive due process claim under the Fourteenth Amendment.

To adequately plead a substantive due process violation, a plaintiff must allege: (1) the infringement of a right protected by substantive due process; and (2) that the conduct of the state actor was sufficiently "egregious" or "outrageous" to rise to the level of a constitutional violation. *See Masciotta v. Clarkstown Cent. Sch. Dist.*, 136 F. Supp. 3d 527, 542 (S.D.N.Y. 2015) (quoting *Lombardi v. Whitman*, 485 F.3d 73, 79 (2d Cir. 2007)); *see also 49 WB, LLC v. Vill. of Haverstraw*, 511 F. App'x 33, 34 (2d Cir. 2013).

Under the first element, the right invoked by Rodrigues is the right to housing or a safe place to stay. The Court need not decide whether this right is of the kind protected by substantive due process, however, because Rodrigues has failed to adequately plead the second element of a substantive due process claim. The complaint alleges that the Centers denied

6

Rodrigues's request to provide her housing as requested. (Dkt. No. 1-1 at 4.) But it provides no details about the circumstances of the denial, such as who at the Centers denied the request, how the denial was conveyed to Rodrigues, or whether other similarly situated women were provided housing. The complaint thus contains no factual allegations to plausibly establish that the Centers' challenged conduct in this case was "arbitrary, conscience-shocking, or oppressive in a constitutional sense," as opposed to merely "incorrect or ill advised." *Cunney v. Bd. of Trs. of Vill. of Grand View*, 660 F.3d 612, 626 (2d Cir. 2011) (citation omitted).

Because Rodrigues has not plausibly alleged facts to satisfy the second element of a substantive due process claim, the Court grants Defendants' motion to dismiss her claim premised on the "[f]ailure to provide housing."

### 3. Infliction of Emotional Distress

Rodrigues also alleges that she suffered "[e]motional distress from being re-victimized from not having a safe, secluded place to stay." (Dkt. No. 1-1 at 4.) It is unclear whether Rodrigues alleges that the infliction of this distress by Defendants was intentional or negligent, and so the Court assesses the claim under both frameworks.

To state a claim for intentional infliction of emotional distress under New York law, "[a] plaintiff must allege: (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard for a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Hanly v. Powell Goldstein, L.L.P.*, 290 F. App'x 435, 440 (2d Cir. 2008). The conduct challenged must be so "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency to be regarded as atrocious, and utterly intolerable in a civilized society." *Sandia v. Wal-Mart Stores, E. LP*, 699 F. App'x 64, 65 (2d Cir. 2017) (quoting *Stuto v. Fleishman*, 164

7

F.3d 820, 827 (2d Cir. 1999)).

Here, Rodrigues has failed to identify any conduct outrageous enough to satisfy the first prong of an intentional infliction of emotional distress claim. Furthermore, under New York law, "[p]ublic policy bars claims alleging [intentional infliction of emotional distress] against governmental entities," such as Defendants in this case. *Black v. Ranley*, No. 17 Civ. 9026, 2018 WL 2766138, at *11 (S.D.N.Y. June 8, 2018) (first alteration in original) (quoting *Afifi v. City of N.Y.*, 961 N.Y.S.2d 269, 270 (App. Div. 2d Dep't 2013)). Therefore, to the extent Rodrigues asserts a claim for intentional infliction of emotional distress, it is dismissed.

New York law also permits claims of negligent infliction of emotional distress. Under the "direct duty theory" of such a claim, as relevant here, "a cause of action lies where plaintiff 'suffers emotional distress caused by defendant's breach of a duty which unreasonably endangered [plaintiff's] own physical safety.'" *Chau v. Donovan*, 357 F. Supp. 3d 276, 289 (S.D.N.Y. 2019) (alteration in original) (quoting *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000)). The duty required to support such a claim "must be specific to the plaintiff, and not some amorphous, free-floating duty to society." *Id.* (quoting *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996)).

Here, at the very least, Rodrigues has not adequately alleged the existence of the kind of duty required to plead a negligent infliction of emotional distress claim under the direct duty theory. Accordingly, to the extent Rodrigues alleges that the infliction of emotional distress by Defendants was negligent, that claim is also dismissed.

### 4. Conspiracy Against Civil Rights

Next, Rodrigues seeks compensation for "[e]conomic strains/losses from the individuals I complained about . . . and the CHOICE the organization made not to assist in helping

[Rodrigues] hold these men accountable." (Dkt. No. 1-1 at 4.) By "individuals" and "these men," the Court understands Rodrigues to mean the people she intended to file police reports against when seeking assistance from the Centers. And by "organization," the Court understands Rodrigues to be referring to the Centers.

Defendants contend that this assertion does not state a legally cognizable claim because it seeks damages from individuals that are not parties to this action, and requests relief that the Court cannot provide: the institution of criminal charges against those individuals. (Dkt. No. 10 at 10–11.) To the extent Defendants are accurately characterizing what Rodrigues seeks through the "economic strains" assertion, Defendants are correct that the assertion does not state a legally cognizable claim to relief. However, the Court also interprets the assertion as an attempt to state a claim for a conspiracy to violate Rodrigues's rights, a cause of action which Rodrigues refers to in her response brief. (*See* Dkt. No. 13 at 3.)

The relevant legal provision, 42 U.S.C. § 1985(3), prohibits "two or more persons in any State or Territory" from "conspir[ing] . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). "To state a claim of civil conspiracy under 42 U.S.C. § 1985, 'a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiffs['] person or property, or a deprivation of a right or privilege of a citizen of the United States.'" *Gallagher v. N.Y.C. Health & Hosps. Corp.*, No. 16 Civ. 4389, 2017 WL 4326042, at *4 (S.D.N.Y. Sept. 20, 2017) (quoting *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999)). The conspiracy alleged "must also be motivated by some racial or perhaps

9

otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id.* (quoting *Thomas*, 165 F.3d at 146).

Here, Rodrigues has not adequately alleged the existence of a conspiracy, the purpose of said conspiracy, or any underlying "invidious discriminatory animus." *Id.* Accordingly, the claim based on "economic strains" is dismissed.

### 5. Equal Protection and 18 U.S.C. § 3771

Rodrigues also asserts a claim for "[l]ack of equal protection under the law" and invokes 18 U.S.C. § 3771. (Dkt. No. 1-1 at 4.) The Court construes this as a claim that Defendants' treatment of Rodrigues violated her right to equal protection under the Fourteenth Amendment and her rights under 18 U.S.C. § 3771.

The Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause has traditionally been applied to governmental classifications that treat certain groups of citizens differently than others." *Fortress Bible Church v. Feiner*, 694 F.3d 208, 221 (2d Cir. 2012). In her complaint, Rodrigues does not identify herself as a member of a protected class or claim that Defendants have a practice of treating members of a certain group of individuals differently from other similarly situated groups of individuals seeking services. The Court thus does not read the complaint to be making a traditional equal protection claim.[2]

Where a plaintiff does not allege membership in a protected class, however, she may still make out an equal protection claim under a "class of one" theory. A "class of one" equal

---

[2] To the extent Rodrigues seeks to assert a traditional equal protection claim in her complaint, that claim is dismissed for the reasons discussed above with respect to the Title VI claim. *See Weiss*, 2019 WL 1244508, at *10 ("The substantive elements of [Title VI] claims are nearly identical to . . . parallel claims under the Equal Protection Clause.").

protection claim may be brought by an individual who "has been intentionally treated differently from others similarly situated [when] there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) (per curiam). "[T]o state a 'class of one' claim under *Olech*, [p]laintiffs must allege: (1) that they were intentionally treated differently from other similarly situated individuals; and (2) that the disparate treatment was either (a) 'irrational and wholly arbitrary' or (b) motivated by animus." *Assoko v. City of N.Y.*, 539 F. Supp. 2d 728, 735 (S.D.N.Y. 2008) (quoting *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001)).

Defendants contend that Rodrigues's "class of one" equal protection claim should be dismissed because the complaint fails to adequately plead either element of such a claim. (Dkt. No. 10 at 12–13.) The Court agrees.

The allegations in Rodrigues's compliant relevant to her equal protection claim are limited to the fact that the Centers "failed to assist" her when she requested services, "but assist[ed] other wom[e]n instead." (Dkt. No. 1-1 at 4.) There are no factual allegations from which the Court could conclude that those other women were similarly situated to Rodrigues, that Defendants intentionally treated Rodrigues differently, or that the alleged differential treatment was irrational or motivated by animus towards Rodrigues. *See Assoko*, 539 F. Supp. 2d at 735–37 (dismissing "class of one" claim on the same grounds). Accordingly, Rodrigues's equal protection claim is dismissed.

In the same numbered item in her complaint, Rodrigues also asserts a claim under the Crime Victim' Rights Act, 18 U.S.C. § 3771. (Dkt. No. 1-1 at 4.) This act lays out the rights of crime victims, including, for example, "[t]he right to be reasonably protected from the accused." 18 U.S.C. § 3771(a). An individual has rights under § 3771, however, only if she is a "crime

victim," meaning "a person directly and proximately harmed as a result of the commission of a Federal offense or an offense in the District of Columbia." 18 U.S.C. § 3771(e)(2)(A). Here, the complaint does not allege sufficient facts to plausibly demonstrate that Rodrigues falls under this definition. Furthermore, the act expressly states that it does not "authorize a cause of action for damages." 18 U.S.C. § 3771(d)(6); *see Hill v. N.Y. Post*, No. 08 Civ. 5777, 2010 WL 2999795, at *3 (S.D.N.Y. May 28, 2010), *report and recommendation adopted*, 2010 WL 2985906 (S.D.N.Y. July 29, 2010). Because Rodrigues seeks only damages here, her claim under § 3771 is foreclosed as a matter of law.

### 6. Right to Free Speech

Rodrigues also asserts a claim for the "[f]ailure of [her] right to free speech." (Dkt. No. 1-1 at 4.) The Court construes this as an attempt to allege that Defendants infringed her right to the freedom of speech under the First Amendment. Defendants seek dismissal of this claim on the basis that "it is unclear" from the complaint "how that infringement allegedly occurred, or what Plaintiff was prevent[ed] from saying." (Dkt. No. 10 at 14.) The Court agrees. Rodrigues's complaint alleges in a conclusory fashion that her "right to free speech" was implicated in her interactions with the Centers, without specifying what speech she was trying to engage in or how the Centers infringed her right to speak. By wholly lacking factual allegations to support any violation of First Amendment rights, Rodrigues's complaint fails to state any free-speech related claim.

### 7. Fraud

Finally, in her complaint, Rodrigues states that the Centers are "not conducting the activities nor providing the services [they] claim[] to offer to the public." (Dkt. No. 1-1 at 4.) And because Rodrigues's response references a cause of action for fraud (Dkt. No. 13 at 3), the

Court interprets this allegation as attempting to state a common law fraud claim.

"To state a claim for common law fraud under New York law, a plaintiff must allege: '(1) a material representation or omission of fact; (2) made with knowledge of its falsity; (3) with an intent to defraud; and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff.'" *Terra Sec. ASA Konkursbo v. Citigroup, Inc.*, 820 F. Supp. 2d 541, 545 (S.D.N.Y. 2011) (quoting *Haggerty v. Ciarelli & Dempsey*, 374 F. App'x 92, 94 (2d Cir. 2010)). A common law fraud claim must comply with the pleading requirements of Rule 9(b), under which a complaint "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Specifically, Rule 9(b) requires a complaint [to] '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 511 (S.D.N.Y. 2016) (quoting *DiMuro v. Clinique Labs., LLC*, 572 F. App'x 27, 30 (2d Cir. 2014)).

Rodrigues's single factual allegation relevant to her fraud claim is that the Centers did not provide her with services that the Centers hold themselves out as offering. But there is no indication, for instance, which specific statement from the Centers Rodrigues challenges as misleading, or why that statement was fraudulent. Nor is there any allegation that Rodrigues reasonably relied on a specific statement from the Centers and suffered harm as a result. The bare allegation of fraud in Rodrigues's complaint is thus insufficient to plausibly establish, with particularity, the elements of a common law fraud claim.

### C. Leave to Amend

On October 2, 2018, after the Centers served their reply on Rodrigues, she filed a second response to the motion to dismiss. (Dkt. No. 16.) This second response alleges additional facts

about the circumstances underlying her claims (Dkt. No. 16 at 2–3), and asserts additional grounds on which her rights have been violated (Dkt. No. 16 at 9). The Court will construe this submission as a request to amend Rodrigues's complaint.

Under Second Circuit precedent, "[a] *pro se* complaint should not [be] dismiss[ed] without [the Court's] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Chavis*, 618 F.3d at 170 (internal quotation marks omitted)). "[R]eading the pro se complaint and opposition papers liberally" in this case, the Court "cannot conclude that amendment would be futile." *Id*.

Accordingly, the Court grants Rodrigues leave to file an amended complaint on or before thirty days from the date that this Opinion and Order is issued. In the amended complaint, Rodrigues must provide a short and plain statement of the relevant facts supporting each claim. To the greatest extent possible, Rodrigues's amended complaint must: (1) give names and descriptions of all relevant persons; (2) describe all relevant events, stating the facts that support Rodrigues's case including what Defendants did or failed to do; (3) give the dates and times of each relevant event or, if not known, the approximate dates and times; and (4) describe how Defendants' acts or omissions violated Rodrigues's rights and describe the injuries Rodrigues suffered. Because Rodrigues's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Rodrigues wishes to maintain must be included in the amended complaint.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.

Rodrigues shall have until June 5, 2019 to file an amended complaint in this action. The

amended complaint must be submitted to the Court's Pro Se Intake Unit, captioned as an "Amended Complaint," and labeled with Docket Number 18-CV-6999 (JPO). The address of the Court's Pro Se Intake Unit is:

>U.S. District Court
>Southern District of New York
>Pro Se Intake Unit
>Thurgood Marshall Courthouse
>40 Foley Square, Room 105
>New York, New York 10007

An Amended Complaint Form for Plaintiff's use is attached to this Opinion and Order.

If Rodrigues fails to file an amended complaint within the time allotted and cannot show good cause to excuse such failure, this case will be closed.

The Clerk of Court is directed to close the motion at Docket Number 9.

SO ORDERED.

Dated: May 6, 2019
New York, New York

_____
J. PAUL OETKEN
United States District Judge

*COPY MAILED TO PRO SE PARTY BY CHAMBERS*